**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| *In re:* | § | |
| | § | |
| CAMP ARROWHEAD | § | |
| | § | |
| *Debtor,* | § | |
| | § | |
| COOLWATER LLC, | § | |
| | § | |
| *Appellant,* | § | |
| | § | Civil Action No. SA-10-CV-11-XR |
| v. | § | |
| | § | Bankruptcy Adversarial No. 09-54693-lmc |
| CAMP ARROWHEAD, | § | |
| | § | |
| *Appellee.* | § | |

**ORDER**

On this day, the Court considered Appellant's Emergency Motion to Stay the Sale of Real Property (Docket Entry No. 1). Having considered the motion, the parties' briefs, the records, and the relevant authority, the motion is DENIED.

**I. Factual and Procedural Background**

The facts of this appeal are largely undisputed.

Debtor Camp Arrowhead, LLP is a Texas limited liability partnership. The general partner is Ewing Gillis, LLC, and the limited partners are Robert Bartell, Mark Bartell, and Kathleen Bartell Margin, siblings and the grandchildren of the founders of Camp Arrowhead. Debtor's primary asset is 650 acres of land located in Hunt, Kerr County, Texas, which had been operated as a girls summer camp. Rob Bartell was operating the camp. Kathleen Bartell sued Rob in 2007, alleging breach of contract, breach of fiduciary duty, and self dealing, and seeking a dissolution of the partnership. Mark intervened in the lawsuit.

On February 24, 2009, the three siblings reached a settlement in their lawsuit, which included an agreement to cease camp operations, sell the property, and dissolve Camp Arrowhead, LLP. The Agreement appointed a Committee, consisting of one lawyer for each sibling to negotiate any listing and sales agreements. Further, the Settlement Agreement provided that "the parties are bound to accept any bona fide offer for sale over $6,500,000 (the 'floor')." The Settlement Agreement further lists all of Debtor's outstanding debts, amounting to $613,855.11, and provides that such obligations are to be paid out of the proceeds of the sale of the Property.

During the siblings' litigation, Coolwater, who was represented by Sharon Millians, had expressed an interest in purchasing the property. On February 25, 2009, the Committee contacted Millians by email, informing her that they had been appointed to coordinate the sale of the camp.

On April 15, 2009, Lewin Plunkett, a Committee lawyer, faxed a letter to Millians, signed by the three lawyers representing the siblings, requesting that Coolwater submit an offer to purchase the property for the firm price of $6,500,00.00. On April 16, Millians emailed Plunkett, stating that she was fine with faxed or PDF signatures just as long as she got "a contract with three signatures (either by the three siblings or valid powers of attorney) so that if all parties sign the document, we all have a binding legal agreement."

On Saturday, April 18, Debtor's lawyers delivered to Millians an "Agricultural Land Earnest Money Contract," signed by the general partner and limited partners (the siblings) of Debtor. Coolwater claims that the contract gave it an option period until April 28 in which to accept. Paragraph 10 of the contract provides: "Time is of the essence of this Contract. If Purchaser has not executed and returned this Contract to Seller by 5:00 p.m. Central Daylight Time, April 28, 2009, this Contract is null and void."

On April 20, 2009, Debtor entered into a Farm and Ranch Contract to sell the property to Glen A. and Suzanne S. Youngkin or their assignee for $6,575,000.00. The Youngkins subsequently assigned the sales contract to P&O Ranch.

On April 20, Rob Bartell and his lawyers sent Millians a letter purporting to revoke the contract. Soon after, Coolwater deposited the $20,000 escrow fee via wire transfer and directed the title company to forward $100 of the earnest money directly to Arrowhead, as required by the Agricultural Land Earnest Money Contract.

*State Court Proceeding*

On April 24, 2009, Coolwater filed suit in the 198th Judicial District Court, Kerr County, Texas, seeking specific performance of the contract. Coolwater also placed a notice of *lis pendens* on the property.

On July 15, Debtor filed a First Amended Motion for Summary Judgment in the state court suit. The motion was denied on August 27, 2009.

*Bankruptcy Proceeding*

On November 30, 2009, Camp Arrowhead, LLP filed for voluntary petition for a bankruptcy under Chapter 11. Shortly thereafter, on December 8, Debtor filed a "Motion for Order to Authorize the Sale of Substantially All of the Debtor's Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances and the Assumption of Executory Contract." Therein, Debtor asserted that it had a total debt of $474,831.41 on two loans from Security State Bank & Trust, had pledged the property as collateral for the notes, and had been in default since 2007. In addition, Debtor stated it had another loan against the property in the approximate amount of $105,000, and had been unable to pay its property taxes. Debtor stated that it had a contract for sale with P&O, and

that it had no binding contract with Coolwater because it had revoked the offer before Coolwater accepted. Debtor moved the Bankruptcy Court to enter an order pursuant to 11 U.S.C. §§ 105, 363 and 365 authorizing the assumption of the Sales Contract, approving the sale of the Property to P&O, and granting related relief. Debtor asserted that assumption of the Sales Contract is beneficial to the estate because it intends to sell the Property and to use the proceeds from the sale to satisfy the claims of its Secured Creditors, as well as the claims of its unsecured creditors, and the sale of the Property is the only source of recovery for these constituencies. Debtor stated that it "firmly believes that there is no valid sales contract with Coolwater. However, if Coolwater has a valid sales contract with the Debtor for the Property, the Debtor conditionally rejects the sales contract pending the closing of the sales transaction to the Proposed Purchasers."

On December 11, Coolwater filed a Motion to Dismiss the bankruptcy proceeding under 11 U.S.C. § 1112(b) "for cause," arguing that the bankruptcy was not filed in good faith, or, in the alternative, for abstention and dismissal under 11 U.S.C. § 305(a)(1). Coolwater argued that Debtor filed the bankruptcy simply to avoid an unfavorable outcome in Coolwater's suit and to avoid its contractual obligation to sell the land to Coolwater. Coolwater argued that there is no basis for Chapter 11 because Debtor has no income, employees, or means to rehabilitate the company. Rather, Coolwater asserted that the Chapter 11 proceeding had been invoked "in an attempt to undo Coolwater's valid option contract in favor of the contract for $75,000.00 more." Coolwater contends that, based on the factors set forth by the Fifth Circuit in *Little Creek Development v. Commonwealth Mortgage Co.*, 779 F.2d 1068 (5th Cir. 1986), Debtor has acted in bad faith and dismissal of the bankruptcy proceeding was appropriate.

On December 28, Debtor filed a Response to Coolwater's Motion to Dismiss. Therein,

4

Debtor noted it was unable to pay its debts as they came due and was unable to pay its property taxes, and that these factors created a need for bankruptcy relief. Debtor stated that is has been unable to refinance the bank notes because of the litigation with Coolwater, and that interest is accruing at the default rate. Further, Debtor stated that it has creditors, both secured and unsecured, with liquidated claims against the Debtor's estate, including multiple secured creditors holding claims in the aggregate of nearly $600,000.00, and also has unsecured creditors who hold claims against the estate aggregating nearly $75,000.00. The Limited Partners also hold equity interests in the Debtor. Thus, Debtor states, it has "several legitimate creditors and interest holders who are entitled to an equitable distribution of the Debtor's assets pursuant to the priority schemes set forth in the Bankruptcy Code." Debtor states that this case was filed for a legitimate purpose—to preserve the value of assets for distribution to the Debtor's creditors and equity holders.

On January 6, 2010, the Bankruptcy Judge held a hearing on the motion to dismiss and the sale motion. The Bankruptcy Judge denied Coolwater's motion to dismiss and granted Debtor's sale motion. The order denying the motion to dismiss states that the motion was denied "for the reasons stated on the record at the hearing." The order granting the sale motion authorized Debtor to sell to the Youngkins or the assigns the assets described in the Farm and Ranch Contract, finding the sale in the best interests of the Debtor, its creditors, its estate, and other parties in interest. The Bankruptcy Judge found that the consideration of $6.75 million was fair and reasonable, was the highest and best offer for the Property, and constituted reasonably equivalent value and fair consideration for the Property under the Bankruptcy Code. The Bankruptcy Judge further found that the sale must be approved and consummated promptly in order to avoid further deterioration of Debtor's assets. Regarding Coolwater, the Bankruptcy Judge noted that it "purports to hold a

5

contract to purchase the Property and has placed a *lis pendens* on the Property," while Debtor disputes that a contract exists. The Bankruptcy Judge then held that, "[t]o the extent Coolwater has a valid and enforceable contract, such contract is deemed rejected as of the date of the closing on the sale between the Debtor and the [Youngkins]" and "[a]ny allowed claim for damages from rejection of the purported contract shall [be] treated under a plan or if no plan is confirmed, from the Sale proceeds in accordance with the priority scheme set forth in the United States Bankruptcy Code." The Judge then lifted the automatic stay provided in Bankruptcy Rules 6004(h) and 6006(d) to allow for immediate closing of the sale.

On December 7, Coolwater filed a Motion for Stay of Final Order on Motion for Order to Authorize the Sale. The Bankruptcy Judge denied the motion on January 8, 2010, but ordered that the stay would be in place until the survey was in place.

*Appeal to the District Court*

On the afternoon of January 8, 2010, Coolwater filed an Emergency Motion to Stay the Sale of Real Property with this Court. (Emergency Mot. to Stay the Sale of Real Property, Jan. 8, 2010 [Docket Entry No. 1].) This Court held a hearing via telephone that day and ordered that there would be no sale of property prior to the close of business on January 12, 2010, so that the parties could brief the issue by January 11.

On January 11, the Court reinstated the automatic stay provision of Bankruptcy Rule 6004(h), such that the January 8, 2010 sale order was stayed until the expiration of fourteen (14) days after entry of the sale order (or until close of business on January 22, 2010). (Order, Jan. 11, 2010 [Docket Entry No. 7].) In its order, the Court stated that because the merits of the appeal of the Sale Order are dependent upon the Bankruptcy Court's ruling on the motion to dismiss, the Court would

grant leave to file an interlocutory appeal of the order denying Coolwater's motion to dismiss if presented with such a motion. (*Id.* at 2 n.1.)

On January 20, the Bankruptcy Court granted Coolwater's Application for Leave to Appeal the motion to dismiss.

## II. Arguments Before the District Court

Coolwater argues that the Bankruptcy Court abused its discretion when it refused to grant a stay of the sale of property pending appeal. Coolwater contends that it meets the requirements necessary to warrant a stay of the Bankruptcy Court's Sale Order pursuant to Rule 8005(d) of the Federal Rules of Bankruptcy Procedure.

## III. Legal Standard

The relevant portion of Federal Rule of Bankruptcy Procedure 8005 reads:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. . . .

FED. R. BANKR. P. 8005. A court's "decision to grant or deny a stay pending appeal rests in the discretion of that court. However, the exercise of that discretion is not unbridled but rather, the court must exercise its discretion in light of what this court has recognized as the four criteria for a stay pending appeal." *In re First S. Savs. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987). The four criteria are:

7

(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439–42 (5th Cir. 2001); *In re First S. Savs. Ass'n*, 820 F.2d at 709. Each criterion must be met and "'the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.'" *Arnold*, 278 F.3d at 439 (quoting *In re First S. Savs. Ass'n*, 820 F.2d at 704). A district court reviews a bankruptcy court's findings of fact under the clearly erroneous standard and decides issues of law de novo. *In re First S. Savs. Ass'n*, 820 F.2d at 711. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

## IV. Analysis

*A. Whether the movant will likely prevail on the merits of the appeal.*

In the Court's Order of January 11, 2010, the Court noted that the merits of the appeal of the Sale Order are dependent upon the Bankruptcy Court's ruling on the motion to dismiss. As a technical matter, if the Court were to have found that the movant would prevail on the merits of the appeal of the Sale Order, the Court would ultimately need to address the substance of the Bankruptcy Court's denial of the motion to dismiss. On January 20, 2010, the Bankruptcy Court granted leave for Coolwater to appeal the Bankruptcy Court's denial of the motion to dismiss.

A party must pursue bankruptcy in good faith. *See Little Creek Dev. Co. v. Commonwealth*

*Mortg. Corp.*, 779 F.2d 1068, 1071–72 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."). Coolwater relies on a non-exhaustive list of factors enunciated by the Fifth Circuit in *Little Creek Development Company v. Commonwealth Mortgage Company* that a court should consider when determining whether a debtor has acted in bad faith. *See id.* 1072–73. The factors, however, do not present a dispositive test for determining bad faith. The Fifth Circuit framed the non-exhaustive list of factors by declaring: "Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. . . . [T]hey are based on a conglomerate of factors rather than on any single datum." *Id.* at 1072.

Coolwater contends that the Bankruptcy Court's decision to grant Camp Arrowhead's motion for sale was clear error because Debtor's Chapter 11 case was filed in bad faith and should have been dismissed pursuant to Section 1112(b) of the Bankruptcy Code and because the Debtor inappropriately employed Sections 363(b), (m), and 365(a) of the Bankruptcy Code to wrongfully terminate one contract in favor of another. Coolwater characterizes the Bankruptcy Court as "wholly ignoring the Fifth Circuit's salient precedent in *Little Creek* and its progeny." (Mot. ¶ 29.) However, the record indicates that the Bankruptcy Court considered the "debtor's financial condition, motives, and the local financial realities. . . . a conglomerate of factors rather than on any single datum" in accordance with *Little Creek*. The Bankruptcy Court cites the concern of Camp Arrowhead of potential foreclosure of the property (Mot. to Dismiss Tr. at 6:3–10), loss of value in a foreclosure sale (*id.* at 6:19–25), protection of equity interest (*id.* at 7:11–15, 7:24–8:3), the

9

eighteen percent interest rate of the bank (*id.* at 8:6–17), and the motivation to resolve the dispute (*id.* at 8:24–9:3). Furthermore, the Bankruptcy Court recognizes that the bankruptcy proceeding involves a single-asset of real estate and weighs it against the other factors, rightfully declaring that the existence of a single asset alone does not mean that the debtor initiated the bankruptcy proceeding in bad faith. (*Id.* at 11:7–15.)

While it is true that a Chapter 11 debtor must demonstrate an ability to effectuate a viable plan of reorganization, the Debtor may propose a liquidating plan, which is permitted under Section 1123(b)(4). "Liquidation under the control of the debtor has been determined to be sufficient to withstand a request for dismissal or conversion under § 1112(b)." *In re First Assured Warranty*, 383 B.R. 502, 544 (Bankr. D. Colo. 2008) (citing *In re Western Pac. Airlines, Inc,*. 218 B.R. 590, 595 (Bankr. D. Colo. 1998). "Thus, the fact the Debtor has no reasonable likelihood of rehabilitation is not determinative." *First Assured*, 383 B.R. at 544. Considering the issue of liquidation, the Bankruptcy Court specifically noted that liquidation alone was not enough to constitute a finding of bad faith. (Mot. to Dismiss Tr. at 16:4–10.) In its decision to order the sale, the Bankruptcy Court made a specific finding that the proposed sale was in good faith as it involved two parties negotiating at arm's length. (*Id.* at 9:3–7.) Additionally, Coolwater has failed to demonstrate the Debtor will be unable to confirm its liquidation plan.

In their Initial Objection to the Emergency Motion by Coolwater, Camp Arrowhead notes that Coolwater stipulated that the debtor was

> (1) . . . in default on its bank notes; (2) incurring interest on such notes at the default interest rates; (3) unable to refinance its loans due to the lis pendens placed on the Property by Coolwater and Coolwater's refusal to subordinate its rights to the bank; (4) not paying its taxes on the Property . . . and (5) not paying its other creditors.

(Debtor's Initial Objection to Emergency Mot. of Coolwater, LLC for Stay Pending Appeal of Final Order on Debtor's Mot. to Assume Executory Contract and Sell Property of the Estate at 6, Jan. 11, 2010 [Docket Entry No. 4].) These factors were before the Bankruptcy Court and considered in its denial of the motion to dismiss.

Appellant also argues that the Bankruptcy Court "ignored a large body of persuasive authority from other jurisdictions" and that the Bankruptcy Court's "total disregard for [*15375 Memorial Corp. v.*] BEPCO[*, L.P.*, 589 F.3d 605, 2009 WL 4912136 (3d Cir. 2009),] is yet another example of the court's abuse of discretion." (Mot. ¶ 32.) The record indicates that the Bankruptcy Court considered this case and found the facts of the case distinguishable. (Mot. to Dismiss Tr. at 5:1–8.) In its opinion in *BEPCO*, the Third Circuit Court of Appeals cited a series of issues that contributed to the conclusion that the bankruptcy had been pursued in bad faith. Many of those factors are not present in this case. Notably, the Third Circuit cited the bankruptcy court finding that the pending litigation "'was the *principal factor*' in the Debtors' filing for bankruptcy." *BEPCO*, 2009 WL 4912136, at *15 (quoting *15375 Memorial Corp. v. BEPCO, L.P.*, 382 B.R. 652, 678 (Bankr. D. Del. 2008)). There is no such finding in this case. In fact, the Bankruptcy Court noted the series of other factors that motivated Camp Arrowhead to filed for bankruptcy. (*See* Mot. to Dismiss Tr. at 5:22–6:3.)

Appellant further argues that Camp Arrowhead is attempting to wrongfully terminate its option contract with Coolwater. (Mot. ¶ 36–39.) The difficulty in applying the case law cited by Appellant is that an option contract existed in those cases. Here, it is not clear whether Coolwater had an option contract with Camp Arrowhead. As the Bankruptcy Court stated: "As it's turned out, however, we are never really going to get to those questions because the parties intentionally left

11

those questions unresolved. That, apparently, was by choice of both parties. So, we do not get to resolve whether this was a true option contract or not, or whether there was true revocation or not." (Mot. to Authorize Sale Tr. at 2:15–21.)[1] Here, there is not enough evidence before this Court or in the record to determine whether Coolwater had an enforceable option contract, meaning that Coolwater cannot stand as the aggrieved parties in cases such as *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936 (11th Cir. 1986).

For the aforementioned reasons, the movant has failed to show a substantial likelihood of success or a substantial case on the merits of its appeal.

*B. Whether the movant will suffer irreparable injury if the stay is not granted.*

Coolwater argues that it will suffer irreparable injury if the stay is not granted because once the sale is consummated with a good faith purchaser, any attempt to appeal the sale is moot. (Mot. ¶ 41.) Appellee points out that if Coolwater had an option to the property, that right is subject to Section 365, which would give rise to the contract rejection damages.[2] *See* 11 U.S.C. § 365(g), (j). Consummation of the stay would likely moot the appeal, but that cannot alone entitle Coolwater to a stay because that would mean that anytime an appeal is mooted, a stay would be required.

---

[1] At the hearing on the motion to stay, however, the Bankruptcy Court found that Coolwater did not possess a valid option contract because the option lacked independent consideration.

[2] In Coolwater's Supplemental Brief Regarding Standing in Connection with Its Emergency Motion for Stay Sale of Real Property, Coolwater acknowledges that
> Section 365(g) treats the rejection of an executory contract as a breach of contract occurring immediately prior to the date a debtor filed for bankruptcy relief. Section 502(g) of the Bankruptcy Code gives a party to contract, which has been rejected by the Debtor, a claim for damages.

(Coolwater's Supplemental Brief Regarding Standing in Connection with Its Emergency Motion for Stay Sale of Real Property at 2 n.1, Jan 11, 2010 [Docket Entry No. 3].)

*C. Whether the granting of the stay would substantially harm the other parties.*

Camp Arrowhead correctly states that once the automatic stay expires, taxing authorities and secured creditors would be free to foreclose on the Property. (Objection ¶ 13.) Even if the harm is not substantial, the stay, especially in light of the other factors, would impose harm on the parties who have engaged in a good faith transaction for sale as noted by the Bankruptcy Court.

*D. Whether granting the stay would serve the public interest.*

In *Arnold v. Garlock, Inc.*, the Fifth Circuit stated that a bankruptcy proceeding could "deprive states and state courts of their right to conduct proceedings brought under state law." 278 F.3d at 441. The Court of Appeals also stated that bankruptcy would "facilitate management of an estate in bankruptcy and potentially provide an even-handed and fair apportionment of the bankrupt's estate to its creditors." *Id.* In *Arnold*, there was a public interest in not overloading the bankruptcy court with thousands of claims to resolve. *Id.* Here, there is no such concern. Moreover, regardless of the outcome of the state court proceeding, Coolwater has been recognized by the Bankruptcy Court as a party in interest and the bankruptcy will facilitate management of the underlying estate.

## V. Conclusion

In accordance with the standard of review that this Court is to apply in evaluating an order of the Bankruptcy Court and the standards to determine whether a stay should be issued, the Court DENIES Coolwater's motion for stay.

It is so ORDERED.

SIGNED this 22nd day of January, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE